OPINION *Page 2 
{¶ 1} Defendant-appellant David D. Dalrymple appeals the May 11, 2007 Judgment Entry of the Fairfield County Municipal Court. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 25, 2006, at 7:23 p.m., Patrolman Grefe and Patrolman Locke of the Lancaster Police Department were dispatched to the scene of an accident, at which Appellant had abandoned his vehicle and fled the scene. Witnesses at the scene told the officers Appellant had fled on foot to a wooded area near the scene. Patrolman Grefe located Appellant in the woods. After reading Appellant his Miranda rights, the officers asked Appellant to submit to a field sobriety test, Appellant acquiesced. Due to his poor performance on the test, Appellant was arrested and transported to the Lancaster Police Department. Appellant submitted to a breath test at 9:26 p.m., which determined his blood alcohol content to be .233.
 {¶ 3} Appellant was arrested and charged with operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1); driving with a prohibitive blood alcohol concentration by breath, in violation of R.C. 4511.19(A)(1)(h); leaving the scene of an accident, in violation of Lancaster City Ordinance 335.12; and driving left of center, in violation of Lancaster City Ordinance 331.06.
 {¶ 4} Appellant entered a plea of not guilty to the charges, and on December 14, 2006 filed a motion to suppress all the evidence obtained as a result of the arrest, arguing the breath test was not performed within the statutorily required three-hour time limit. *Page 3 
 {¶ 5} The other driver struck by Appellant, Jacquelyn Geczi, testified at the suppression hearing she left her residence at 7:00 p.m. on the night of the accident, and approximately ten minutes later the accident occurred. She testified she drove from Coonpath Road and Route 37, and the accident occurred at Route 158. She explained she travels the route often, and it usually takes her no longer than ten minutes to get to Route 158 from her residence.
 {¶ 6} The BMV 2255 form completed after the accident and stipulated to at the hearing, lists the time of violation as 7:23 p.m., the time of test as 9:26 p.m., and Appellant's blood alcohol level as .233.
 {¶ 7} The trial court denied the motion to suppress, and on May 11, 2007, Appellant entered a plea of no contest to violation of R.C. 4511.19(A)(1)(a) and leaving the scene of an accident, in violation of Ord. 335.12. The State subsequently dismissed the charges of violation of R.C 4511.19(A)(1)(h) and Ord. 331.06.
 {¶ 8} The trial court then sentenced Appellant to 180 days in jail, with 120 suspended, and a fine of $600.00. Appellant's license was suspended for two years.
 {¶ 9} Appellant now appeals, assigning as error:
 {¶ 10} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN DENYING HIS MOTION TO SUPPRESS THE BLOOD-ALCOHOL TEST RESULTS WHEN THERE WAS NO EVIDENCE TO SHOW THAT THE BLOOD WAS WITHDRAWN WITHIN THREE HOURS OF ANY ALLEGED OPERATION OF A MOTOR VEHICLE."
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In *Page 4 
reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583;State v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; State v.Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906;Guysinger, supra.
 {¶ 12} Initially, we note, Appellant entered a plea of no contest to violation of R.C. 4511.19(A)(1)(a), which reads:
 {¶ 13} "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 14} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 15} Accordingly, appellant has not demonstrated prejudice as a result of the trial court's alleged improper admission of the breath test results. There was *Page 5 
competent, credible evidence of Appellant's being under the influence of alcohol, apart from the breath test, supporting Appellant's conviction, and the trial court did not necessarily rely on Appellant's breath test in convicting him of violating the statute.
 {¶ 16} Further, the State presented sufficient evidence demonstrating substantial compliance with the three-hour statutory requirement for conducting the breath test.
 {¶ 17} Ohio Revised Code Section 4511.19(D) requires the collection of bodily substances for alcohol or drug testing be collected within three hours of the violation. The State must conclusively demonstrate the accident and corresponding vehicle operation could not have occurred more than three hours earlier than the time of the specimen collection, or the State has not met its burden. State v. Middaugh (December 16, 1996), Coshocton App. No. 96 CA 2.
 {¶ 18} At the suppression hearing in this matter, the other driver, Jacquelyn Geczi testified on direct examination:
 {¶ 19} "A. Um, I left my, um, residence that is at Coonpath and 37 at approximately 7:00, maybe five after 7:00.
 {¶ 20} "Q. Okay. When you say approximately 7:00 . . .
 {¶ 21} "A. Um, on that evening . . .
 {¶ 22} "Q. Okay. First of all, the crash occurred after you left your house, right?
 {¶ 23} "A. Exactly.
 {¶ 24} "Q. Okay. Now did you look at a clock or anything like that when you left the house or (inaudible)?
 {¶ 25} "A. Uh, when I got in my vehicle it was like 7:05.
 {¶ 26} "Q. And you looked at your clock? *Page 6 
 {¶ 27} "A. Um, yes.
 {¶ 28} "Q. Okay. And so is that, is your clock pretty accurate? I mean, your car clock?
 {¶ 29} "A. Um, yes. Yep.
 {¶ 30} "Q. Okay. And you say you left your house at 7:05?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. Or right around there? Okay. And, um, and then how long, do you know how long it was between when you left and when the accident occurred?
 {¶ 33} "A. Um, no more than ten minutes. I live, like I say, at Coonpath and 37 and when the accident occurred on 158, it takes me no longer than ten minutes.
 {¶ 34} "Q. Is that a route that you travel regularly?
 {¶ 35} "A. To, it, I, yes . . . It's . . .
 {¶ 36} "Q. So your, you know very well how long it takes you to get to that spot?
 {¶ 37} "A. Yes. Yes.
 {¶ 38} "Q. Okay. So in your, in your estimate it would from 7:05 to, plus ten minutes?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. Okay.
 {¶ 41} (Pause)
 {¶ 42} "Q. Okay. And again, you did look at the clock then?
 {¶ 43} "A. Yes.
 {¶ 44} "Q. Okay.
 {¶ 45} "A. I did look at the clock." *Page 7 
 {¶ 46} Tr. at 5-7.
 {¶ 47} On cross-examination, the testimony continued:
 {¶ 48} "Q. So, basically, you, you believe that you left your house somewhere around 7:00, correct?
 {¶ 49} "A. Um, hum.
 {¶ 50} "Q. And somewhere, ten minutes, fifteen minutes, maybe twenty minutes, this accident occurred somewhere thereafter?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. But you weren't looking at your . . .
 {¶ 53} "A. I mean, I knew that when I got into my vehicle and looked at my clock and then at 7:20, 7:25, I know the accident had already occurred because I, you know, after the air bags imploding in my face and, uh, you know the normal occurrences in an accident, um, I did look at my clock and, you know, it was like 7:25, 7:30 when the police arrived, so . . .
 {¶ 54} "Q. Is, is this a digital clock?
 {¶ 55} "A. Um, yes. And the radio, you know, everything was still functioning.
 {¶ 56} "Q. So your car . . .
 {¶ 57} "A. As far as that part of the vehicle.
 {¶ 58} "Q. Your car was still turned on by the time the police got there?
 {¶ 59} "A. Um, hum.
 {¶ 60} "Q. You hadn't turned it off while you sat there?
 {¶ 61} "A. No, I hadn't. *Page 8 
 {¶ 62} "Q. Okay. So you're saying by the time the police got there it was somewhere between 7:25 and 7:30?
 {¶ 63} "A. Um, hum."
 {¶ 64} Tr. at 12-13.
 {¶ 65} It is undisputed the breath test was conducted at 9:26 p.m. Accordingly, based upon the above, we find the State met its burden in demonstrating the test was conducted within the three-hour statutory time requirement.
 {¶ 66} Appellant's sole assignment of error is overruled.
 Hoffman, P.J., Farmer, J. and Edwards, J. concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Judgment of the Fairfield County Municipal Court is affirmed. Costs assessed to Appellant. *Page 1